**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 21-cr-034-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    MICHAEL SHAWN STEWART, and
2.    BRYANT EDWIN SEWALL,

      Defendants.

---

**ORDER ON DEFENDANT'S MOTION FOR *JAMES* HEARING**

---

The Government charges Defendants Michael Shawn Stewart and Bryant Edwin Sewall with fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371.  (ECF No. 1.)

Currently before the Court is Defendants' Motion for Determination of 801(d)(2)(E) Evidence and Request for a *James* Hearing (ECF No. 113), in which they seek a pretrial ruling on whether alleged co-conspirator statements satisfy Federal Rule of Evidence 801(d)(2)(E) and may therefore be introduced against them at trial for the truth of the matters asserted.[1]  The Court presumes familiarity with the facts of this

---

[1] The practice surrounding Rule 801(d)(2)(E) embodies what is commonly referred to as a *James* determination, which gets its name from *United States v. James*, where the Fifth Circuit held that a declaration by one defendant is admissible against other defendants only when there is a "sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy."  590 F.2d 575, 581 (5th Cir. 1979).  The Court at times continues to employ the *James* terminology in this Order, in accordance with common practice.  But, ultimately, admissibility of the co-conspirator statements is governed by Rule 801(d)(2)(E).

case.

Per the undersigned's usual practice, the Government was ordered to respond to Defendant's motion with a detailed written proffer of co-conspirator statements it intends to introduce for the truth of the matters asserted.  (ECF Nos. 126, 126-1.)  The Government submitted a proffer containing 229 statements.  (*Id.*)  Defendants responded with arguments opposing the statements' admissibility.  (ECF Nos. 134, 134-1.)

For the reasons explained below, Defendants' objections are sustained in part and overruled in part.

## I.  NO HEARING NECESSARY

A district court can "only admit co-conspirator statements if it holds a *James* hearing or conditions admission on forthcoming proof of a predicate conspiracy through trial testimony or other evidence."  *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation marks omitted).  Therefore, although a hearing is not required, the Tenth Circuit has expressed a "strong preference" for pretrial *James* proceedings.  *Id.*  The reason for this preference is that if a court provisionally admits a statement with the caveat that the Government "connect up" the statement to sufficient evidence of a predicate conspiracy at trial, the risk of prejudice to a defendant is high should the Government later fail to meet its burden.  *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994).  Nevertheless, whether to hold a *James* hearing rests within the Court's discretion.  *Id.*

The Court has reviewed the briefing on this issue and determined that a hearing is not necessary to resolve the admissibility of the Government's proposed co-conspirator statements.  The Court therefore decides the matter on the briefing

2

submitted by the parties.

## II.  LEGAL STANDARD

Rule 801(d)(2)(E) provides that a statement is "not hearsay" if it "is offered against an opposing party" and it "was made by the party's coconspirator during and in furtherance of the conspiracy."  The Court may not admit such a statement under this Rule without being satisfied by a preponderance of the evidence that (1) "there was a conspiracy"; (2) the conspiracy "involv[ed] the declarant and the nonoffering party"; and (3) "the statement was made during the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) (internal quotation marks omitted).

Whether this standard is satisfied is a "preliminary question about whether . . . evidence is admissible," meaning the Court "is not bound by evidence rules, except those on privilege," when resolving the question.  Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 178–79.  Thus, the challenged statements themselves may be a part of the preponderance of evidence supporting admissibility under Rule 801(d)(2)(E).  *See Bourjaily*, 483 U.S. at 180 ("[T]here is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."); *see also United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) ("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted . . . .").

However, the Tenth Circuit requires "some independent evidence linking the defendant to the conspiracy," meaning "evidence other than the proffered [co-conspirator] statements themselves."  *Id.* (alteration in original) (internal quotation marks

3

omitted); *see also United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993) ("[M]ost courts require some reliable corroborating evidence apart from the [co-conspirator's] statements before those statements may be used."). The required quantum of independent evidence may exist "even when it is not 'substantial.'" *Lopez-Gutierrez*, 83 F.3d at 1242 (quoting *Rascon*, 8 F.3d at 1541).

Assuming the Government establishes the existence of conspiracy in which the declarant and the defendant participated, the final question is whether any proffered statements were made by a declarant-conspirator "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "A wide array of statements can fit this requirement," *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017), assuming the statements were made "before the objectives of the conspiracy have either failed or been achieved," *United States v. Owens*, 70 F.3d 1118, 1126 (10th Cir. 1995) (internal quotation marks omitted); *see also Krulewitch v. United States*, 336 U.S. 440, 442–43 (1949) (holding that a declaration made after the conspiracy's "objectives either had failed or had been achieved" was inadmissible because it was not made pursuant to and in furtherance of the conspiracy).

> Examples of statements which may be found to satisfy the "in furtherance" requirement include statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

*United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc) (internal block quote formatting omitted). On the other hand, "statements are not in furtherance of the conspiracy if they are mere narratives, that is statements relating to past events, even

4

those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose." *Id.* at 1578 (internal quotation marks omitted).

The Tenth Circuit calls for "a construction of the 'in furtherance' requirement protective of defendants," and applies the test "narrowly." *Id.* The focus is "on the declarant's intent in making the statement," rather than on the statement's effect. *Id.* However, "[n]o talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. To the contrary, this determination must be made by examining the context in which the challenged statement was made." *Id.* at 1578–79.

### III.  ANALYSIS

#### A.  Existence and Scope of Conspiracy

To prove that a conspiracy existed, the Government must show: (1) two or more persons agreed to violate the law; (2) the defendants knew the essential objectives of the conspiracy; (3) the defendants knowingly and voluntarily participated in the conspiracy; and (4) the alleged co-conspirators were interdependent. *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005). To prove knowledge of the essential objectives of a conspiracy, the Government does not have to show the alleged co-conspirators knew all the details or all the members of a conspiracy. *Id.* "Rather, the government only needs to demonstrate the defendant shared a common purpose or design with his alleged co-conspirators." *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006). A conspiracy may be inferred from circumstantial evidence. *United States. v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986).

5

At the outset, the Court must clarify whether the Government has presented "evidence [of the conspiracy] other than the proffered [co-conspirator] statements themselves." *Lopez-Gutierrez*, 83 F.3d at 1242.  The Government marshals the following evidence in support of the existence of a conspiracy: (1) Stewart's loss of nearly $500,000 of investment money prior to the recruitment of Sewall, which was apparently not disclosed to investors; (2) Mediatrix's assessment of "performance fees" on purportedly successful trades that were not actually successful; (3) the creation of "Blue Isle Markets" as a middleman charging additional brokerage fees; (4) and the progressive growth of Mediatrix's undisclosed trading deficit (*i.e.*, the "hole"), which Defendants avoided disclosing to investors by only reporting closed trades while leaving large losing trades open until they could be offset by winners.  (ECF No. 126 at 1–7.)

Defendants argue that they had a legitimate business that eventually struggled due to arbitrary restrictions imposed by their broker, Equiti, which interfered with their otherwise successful trading strategy.  (*See generally* ECF No. 134.)  They point out that preparing marketing materials, raising money, charging fees, and communicating with a broker are legitimate business activities for foreign exchange market ("FOREX") traders; and they assert that communications between themselves bemoaning their business partner Michael Young's refusal to stick to tasks assigned to his role within Mediatrix are innocuous.  (*See generally* ECF No. 134-1.)

After careful consideration of the parties' briefs and the proffered statements, the Court concludes that the Government has proved the existence of a conspiracy whose purpose and scope was to charge customers unearned fees based on manipulated and incomplete trading data and to conceal this duplicity from investors and potential investors via misleading marketing materials and account statements.  That much of

6

Defendants' conduct and many of the proffered statements would be unremarkable in the context of a legitimate business does nothing to detract from this conclusion.  The Government's theory, which it supports amply for purposes of Rule 801(d)(2)(E), is that Mediatrix and Blue Isle were the vehicles for Defendants' fraud.  As discussed below, conduct to advance those companies' business interests may, in certain circumstances, be considered in furtherance of the alleged conspiracy.

**B.     Statements Made During and in Furtherance of the Conspiracy**

Defendants argue that even if a conspiracy existed, the proffered statements were not in furtherance of it for numerous reasons.  (ECF No. 134 at 11–20.)  Instead, they argue the statements are "cherry-picked" from "hundreds of thousands of emails" in order to mischaracterize Defendants' statements.  (*Id.*)  They divide the statements into seven categories and explain how such statements do not further the alleged conspiracy: statements regarding routine business practices ("Category I"); statements regarding routine technical trading information ("Category II"); statements about professional and personal history ("Category III"); statements with third parties regarding routine account management ("Category IV"); statements in marketing materials and newsletters ("Category V"); statements regarding Divisa/Equiti errors ("Category VI"); statements regarding roles within the business ("Category VIII").  (*Id.*)

In the Government's view, Mediatrix and Blue Isle were the core of Defendants' conspiracy, and functioned as the vehicles they used for siphoning their client's money while masking the fact that their trading was in fact losing money.  (ECF No. 126 at 7–21.)  Thus, the Court concludes that statements between those entities or to others that

7

advanced those companies' ability to charge fees to enrich Defendants,[2] furthered their conspiratorial cause.  (*See id.* at 23–25.)  Likewise, statements that conceal or prolong the concealment of the conspiracy from non-conspirator Michael Young, Equiti representatives, or clients are also in furtherance of the conspiracy.  (*See id.*)

The Government's position has considerable merit.  The Court concludes that numerous proffered statements that might be innocuous in other circumstances were made in furtherance of Defendants' alleged conspiracy.  And because Defendants make no argument concerning the alleged conspiracy's duration other than contesting its existence at all, this conclusion results in those statements' admissibility for the truth of the matters asserted.

Given the exceptional number of proffered statements, the Court lists below those statements that DO NOT meet Rule 801(d)(2)(E)'s requirements and are NOT admissible under the provisions of that rule.[3]  All other proffered statements are admissible at trial:

| Beginning Page # (ECF No. 134-1) | Proffered Statement # |
|---|---|
| 1 | 1, 2 |
| 6 | 8, 9, 10 |
| 11 | 15 |
| 13 | 20 |

---

[2] For example, statements intended to recruit new investors or retain old ones furthered the conspiracy by providing clients for Defendants to charge unwarranted fees.  And statements intended to lift or raise trading limits furthered the conspiracy by making it easier for Defendants to hide the "hole" by keeping losing trades open without impacting other trading activity.

[3] This ruling does not preclude the possible admission of any of these proffered statements under the provisions of another rule of evidence.

8

| | |
|---|---|
| 14 | 21, 23 |
| 15 | 24, 25 |
| 17 | 32 |
| 18 | 33, 34 |
| 19 | 37 |
| 22 | 43 |
| 28 | 52 |
| 31 | 57, 58, 59 |
| 32 | 60, 61 |
| 33 | 64 |
| 35 | 68 |
| 46 | 84, 85 |
| 51 | 94, 95 |
| 55 | 103 |
| 57 | 110 |
| 60 | 112 |
| 62 | 129 |
| 63 | 130 |
| 64 | 133 |
| 66 | 138 |
| 72 | 153 |
| 90 | 198 |
| 94 | 204, 205, 206 |

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Determination of 801(d)(2)(E) Evidence and Request for a *James* Hearing (ECF No. 113) is DENIED to the extent they request an evidentiary hearing and GRANTED to the extent they request a pretrial evaluation of the Government's statements proffered under Rule 801(d)(2)(E); and

2. Defendants' specific objections are SUSTAINED IN PART and OVERRULED IN PART as described above.

Dated this 9th day of February, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge