**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 21-cr-034-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

  1.    **MICHAEL SHAWN STEWART**, and
  2.    **BRYANT EDWIN SEWALL**,

    Defendants.

---

**AMENDED ORDER RULING ON DEFENDANTS' JOINT 702 MOTION**

---

The Government charges Defendants Michael Shawn Stewart and Bryant Edwin Sewall (together, "Defendants") with fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371.  (ECF No. 1.)  Currently before the Court is Defendants' Joint Motion to Exclude or Limit Expert Testimony ("Motion").  (ECF No. 141.)  The Government filed a response (ECF No. 151), and Defendants filed a reply (ECF No. 152).

For the reasons explained below, the Motion is granted in part, denied in part, and denied as moot in part.

## I. LEGAL STANDARD

### A.    Rules 401, 402 & 403

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges

have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

**B.     Rule 702**

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods,"

2

and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' " *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93). Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

## II. ANALYSIS

Defendants challenge the expected testimony, in whole or in part, of six of the Government's proffered witnesses. (ECF No. 141 at 13–17.) They group these witnesses into three categories, which the Court adopts for organizational purposes.

3

(*Id.*)

        1.    <u>Foreign Exchange Experts</u>

Jennifer Sunu and Mark Oldani are employees of the National Futures Association ("NFA"), a self-regulatory organization for the U.S. derivatives industry to which the Commodity Futures Trading Commission ("CFTC") has delegated registration responsibility. (*Id.* at 1–2, 17.) With some exceptions not pertinent here, entities required by federal law to register with the CFTC are also required to register as members of the NFA, thereby becoming subject to its rules. (*Id.* at 17.) The core of Defendants' objections to Sunu and Oldani's proposed testimony is that they are not and were not NFA members and were not subject to its rules. (*See id.* at 17–18.)

As Defendants explain it, Sunu's proposed testimony entirely concerns NFA rules. (*Id.* at 13–14.) She will testify that in 2009 the NFA implemented rules that prohibit hedging and mandate first-in-first-out ("FIFO") accounting of customer accounts, in an effort to prevent asset managers from disguising their losses. (*Id.* at 14.) Further, she will testify that the NFA advised members using the MetaTrader4 ("MT4") software to generate client account statements using the FIFO method, despite MT4 itself reflecting hedged positions. (*Id.*) They seek to exclude all of Sunu's proposed testimony.

On the other hand, Defendants have no general objection to Oldani's proposed testimony on various aspects of the global foreign exchange ("ForEx") market—"including the application of terms such as limits, security deposits, markups, commissions, rebates, and swaps"—and MT4 "from an execution perspective." (*Id.* at 14–15.) To the extent Oldani will testify about those concepts in the context of NFA rules, they have the same objections as they have to Sunu's proposed testimony. (*Id.*

4

at 15.)  Further, they object to Oldani testifying about the application of FIFO and prohibition on hedging in the United States, again for the same reasons as they object to Sunu testifying on these topics.  (*Id.*)

They also argue that even if these opinions are relevant, such relevance is substantially outweighed by the undue prejudice the opinions would have on Defendants.  Specifically, they assert that hearing these opinions may confuse the jury and mislead them into thinking the NFA rules bound Defendants and may lead the jury to believe that hedging is not a legitimate investment strategy merely because it is prohibited for U.S.-based traders.  (*Id.* at 19–20.)

The Government argues that neither Sunu nor Oldani will testify about how ForEx markets should be regulated.  (ECF No. 151 at 2–5.)  Rather, Sunu will testify about the mechanics of trade execution and specifically that: (1) FIFO execution makes prohibits hedging[1]; (2) hedging can enable asset managers to disguise losses (and explain how); and (3) traders utilizing a FIFO execution method who also used MT4 would have to perform and "account reconciliation" when generating client account statements.  (*Id.* at 2–3.)  The Government represents that neither it nor Sunu will suggest that Defendants were obliged to follow NFA rules, including with respect to FIFO and hedging.  (*Id.* at 3.)  Further, it suggests that a limiting instruction and cross-examination could cure any concerns about jury confusion.  As for Oldani, the Government argues that he, too, will testify about how ForEx markets function and what "hedging" means in the ForEx context, without suggesting that NFA rules bound Defendants.  (*Id.* at 3–5.)

---

[1] The Court reads this statement from the Government as the FIFO method itself making hedging impossible from a mechanical perspective, not that the practice is merely not allowed.

Defendants' concerns are not assuaged by the Government's representations. (ECF No. 152 at 2–3.)  They argue that the Government's disclosures regarding Sunu contradict its representation to the Court that Sunu will not testify on NFA regulations, and the risk of jury confusion remains.  (ECF No. 152 at 2–3.)

 After considering the parties' arguments, the Motion is denied in part, denied as moot in part, and granted in part.  The Court will hold the Government to its representations that neither Sunu nor Oldani will suggest that Defendants were (or are) bound by NFA rules or that they should have followed NFA rules even though not bound by them.  Therefore, the portion of the Motion concerning such an implication by the Government or the witnesses is denied as moot.  In that regard, the Court also directs the parties to provide it with an appropriate limiting instruction.  *See infra*, Part III.

The Motion is granted with respect to any discussion that FIFO is mandated and hedging is prohibited by the NFA for U.S.-based traders.  The Court agrees with Defendants that this is irrelevant, especially given that the Government's position that this case is about whether Defendants lied to their investors, not whether they violated any specific country's regulations.  This observation does not, however, preclude a witness with knowledge of such matters to testify as to how hedging might enable deceit, or that it is prohibited "in some part(s) of the world," or some similarly broad statement that communicates hedging's risk to ForEx investors, without disclosing its legal status in the United States.

The remainder of the Motion concerning Sunu and Oldani is denied.  The Court agrees that it is certainly helpful to and relevant for the jury to have the concepts of FIFO and hedging explained to them by competent experts.

6

>   2. <u>Brokerage Experts</u>

Defendants next challenge the proposed testimony of "three witnesses who were executives at Equiti during the timeframe included in the Indictment." (ECF No. 141 at 15.)  Defendants take no issue with these witnesses testifying "about the forex trading market, FIFO generally (rather than as a regulatory requirement), and relevant Forex concepts such as limits, markups, commissions, rebates, and swaps." (*Id.* at 16.)  They take issue, however, that "none has the requisite background or experience to render him an expert in any of the technical software platforms used in the forex market." (*Id.*)  Defendants argue this is because the programs relevant to this case, MT4, PrimeXM, and the Percent Allocation Management Module ("PAMM") were created by independent software developers who merely licensed their programs to Equiti, and none of the proffered witnesses "did anything more than become familiar with these platforms through their use in daily trading operations." (*Id.* at 21.)

The Government responds that one does not need to personally program software to be well-versed in its capabilities, and Rule 702 is clear that one can become an expert in something "through experience."[2]  (ECF No. 151 at 7–8.)  The Court fully agrees with this contention, and summarily denies this portion of the Motion. Nevertheless, the Court will consider these witnesses' qualifications as it would any other expert if/when offered by the Government during trial.  And to the extent one of these witnesses offers opinions on a program he or she is not sufficiently familiar with, the Court will not hesitate to sustain a properly raised objection.

---

[2] The Court does not address the Government's argument that these witnesses are lay witnesses and consequently, does not address Defendants' arguments in reply.  (*See* ECF No. 152 at 5.)

### 3. Forensic Accounting Expert

Finally, Defendants challenge the proposed lay testimony of forensic accountant Lindsay Fryer. Specifically, they argue what exactly her lay opinions would be is unclear based on the Government's disclosure. (ECF No. 141 at 23.) Moreover, due to the lack of meaningful disclosure, they claim it is impossible for Defendants to determine whether the opinions she will offer are impermissible, undisclosed expert opinions. (*Id.*) Therefore, they seek to exclude her testimony about "categories of expenditures and transactions contained in the bank records" she reviewed. (*Id.*)

The Government responds that it sufficiently disclosed not only a description of what Fryer would testify about, but also her underlying work product (the summaries she prepared). (ECF No. 151 at 9.) Further, it argues that the opinions Fryer will offer are not expert opinions, and therefore not subject to Rule 702. (*Id.* at 9–10.) To this point it argues, by way of example, that it requires no esoteric knowledge "to opine that a purchase at 'Delta Air' can be categorized as a travel expense." (*Id.* at 10.) Defendants' reply does not respond to these arguments.

After considering the parties' positions, the Court agrees with the Government in general, but lays out the following guidelines for Fryer's proposed lay testimony: without relying on her specialized knowledge as a forensic accountant, Fryer may explain what records she reviewed, how she compiled the information in those records in the summaries the Government seeks to admit under Rule 1006, how she categorized transactions to create the summaries, and anything else necessary to assist the jury in understanding for itself the information contained in the summaries prepared by Fryer. Objections to testimony which strays beyond these limitations will likely be sustained.

## III. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. Defendants' Joint Motion to Exclude or Limit Expert Testimony is granted in part, denied in part, and denied as moot in part, as stated herein;

2. No later than **Tuesday, April 30, 2024**, the Government is DIRECTED to file a limiting instruction clarifying, in language stipulated to by the Defendants, that Defendants are not bound by NFA rules, nor may the jury infer that Defendants should be bound by NFA rules; and

3. If the parties cannot agree on language for the limiting instruction referenced in paragraph 2, they are DIRECTED to each file their own respective disputed instruction by no later than **Tuesday, April 30, 2024**.

Dated this 19th day of April, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge