**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 21-cr-034-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   MICHAEL SHAWN STEWART, and
2.   **BRYANT EDWIN SEWALL**,

    Defendants.

**ORDER RULING ON THE GOVERNMENT'S RULE 702 MOTIONS**

The Government charges Defendants Michael Shawn Stewart and Bryant Edwin Sewall ("Sewall") (together, "Defendants") with fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. (ECF No. 1.) Currently before the Court are the Government's Motion to Exclude Expert Testimony of Defendant Sewall's Proffered Witness Dr. Timothy Weithers ("Weithers Motion") (ECF No. 145) and Motion to Exclude Expert Testimony of Defendant Sewall's Proffered Expert Witness Cliff Porter ("Porter Motion") (ECF No. 148).

For the reasons explained below, the Weithers Motion is granted in part, denied in part, and taken under advisement in part, and the Porter Motion is granted in part and denied in part.

## I. LEGAL STANDARD

### A. Rules 401, 402 & 403

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

### B. Rule 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to

2

give opinions in a particular subject area.  Rather, the Court must "perform[ ] a two-step analysis."  *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.' "  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts."  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592–93).  Where an expert witness relies on experience, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that

renders testimony both reliable and relevant.

## II. ANALYSIS

Both of the Government's motions contain general objections to Sewall's proffered witnesses and challenges to specific opinions they may offer at trial. (*See generally* ECF Nos. 145, 148.) To the extent a general objection resolves one of the Government's specific challenges, the Court does not further consider the challenge.

### A.  Weithers Motion

The Government challenges Dr. Weithers's proposed testimony on three general bases (assistance to the jury, qualification, and relevance) as well as many of his specific opinions on particular grounds. (*See* generally ECF No. 145.) The Government attaches to the Weithers Motion a chart summarizing the challenged opinions and identifying on which of the general bases the challenge is based. (ECF No. 145-2.) The Court incorporates the Government's attachment by reference rather than reproducing the challenged opinions in this Order.

#### 1.  Assistance to the Jury

The portion of the Weithers Motion discussing the requirement that expert opinions assist the jury is more a general legal standards section than an actual challenge. (*See* ECF No. 145 at 1–2.) To the extent it is intended as more, this portion of the motion is denied.

#### 2.  Qualifications

The Government argues that Dr. Weithers is not qualified to offer many of the opinions in his proposed testimony. (*Id.* at 3.) In its view, Dr. Weithers is an academic and economist with general knowledge about foreign exchange ("ForEx") topics, but he has no specific training or experience that would qualify him to speak to whether

4

Defendants made false and misleading statements about their ForEx business; the "mechanisms and architecture of spot trade execution"; or how to properly analyze spot-trade accounts. (*Id.* at 3–7.) It likens Dr. Weithers to a mechanic who, like Mona Lisa Vito, may have "general automotive knowledge," but could not "help the jury understand whether someone committed vehicular homicide." (My Cousin Vinny (Palo Vista Productions 1992); ECF No. 145 at 3.)

Sewall responds that the Government's analogy misses the mark because Dr. Weithers's primary academic and private-sector experience in ForEx derivatives is indeed related to spot trading. (ECF No. 153 at 5.) In fact, he argues, trading ForEx derivatives is not only more complex than spot trading, it *requires* understanding spot markets. (*See id.* at 7.) More generally, Sewall argues that Dr. Weithers is qualified via: (1) his academic background taking and teaching undergraduate and graduate classes on ForEx, including spot trading; (2) authoring various publications on the same; and (3) serving as Managing Director of UBS, trading in the ForEx markets (mostly derivatives and some spot trading). (*Id.* at 5–7.) To the extent the Government attempts to distinguish between derivatives and spot trading by emphasizing that derivatives are typically traded in exchanges and spot trading is typically "over-the-counter," Sewall responds that over-the-counter trading is not unique to spot markets. (*Id.* at 7.)

After considering the parties' arguments, the Court denies this portion of the Motion without making an affirmative determination as to the relevance of Dr. Weithers's derivatives experience. Both parties' views on Dr. Weithers's background and its relevance to this case are plausible, despite being diametrically opposed. Neither party

5

has convinced the Court their view must be adopted prior to trial, and therefore, the Court will wait to hear from Dr. Weithers himself and determine after *voir dire* how relevant his primarily derivatives-focused experience is to this case.

   3.   Relevance

The Government next argues that the majority of Dr. Weithers's proposed testimony is irrelevant, and therefore inadmissible. (ECF No. 145 at 7–9.) This contention is based on the assertion that (1) certain terminology used in multiple contexts has a specific meaning in ForEx that is different than how Dr. Weithers uses that terminology in his opinions; and (2) certain "general market principles" and "specific spot forex concepts" discussed in Dr. Weithers's opinions are unrelated to what the jury must decide. (*Id.* at 9.)

Sewall responds that the Government's relevance argument "appears to believe that the admissibility of Dr. Weithers's testimony is to be viewed in terms of its compatibility with the Government's theory of prosecution." (ECF No. 153 at 8.) Moreover, he argues that the Government wants to itself offer testimony from multiple experts on the same and similar general ForEx concepts, which will provide the jury with sufficient background to interpret the evidence in this case and render a just verdict. (*Id.* at 9–11.) Finally, he argues that Dr. Weithers's proposed testimony will be "about the same subjects and with the same rigor that he applies when instructing his students at respected academic institutions like Carnegie Mellon University and the University of Chicago," and when preparing his publications. (*Id.* at 10.)

Generally speaking, the Court agrees with Sewall. It is not clear to the Court, no matter how authoritative a tone the Government may wish to take in its briefing, that concepts such as first-in-first-out ("FIFO") and hedging are distinct terms of art when

6

used in the ForEx context. It will be up to the jury, with the benefit of both direct and cross-examination, to sort that issue out. Therefore, this portion of the Weithers Motion is denied.

4.  Challenges to Specific Opinions

The Court turns next to the Government's challenges to specific opinions proffered by Dr. Weithers in his expert disclosures.

**Opinion 1.** The Government's objections to Opinion 1 are overruled. It is not apparent to the Court from the briefing that the "mark-to-market" concept is irrelevant to this case. (*See* ECF No. 145 at 10.) As the Court reads the Government's excerpt, Opinion 1 concerns this concept as it generally relates to investment strategy, which broadly speaking is not irrelevant to the facts of this case. (*See* ECF No. 145-2 at 1.) Moreover, the Court is unconvinced by the Government's assertion that Dr. Weithers provides insufficient methodology for this opinion: one does not have to have an investment model to know that different countries have different regulatory systems that may affect investment decisions. (*See id.*; ECF No. 145 at 10.)

**Opinion 2.** The Government's objections are sustained in part and overruled in part. The Court agrees with the Government that Dr. Weithers's disclosures do not set forth his familiarity with Mediatrix's trading strategies or explain how he became familiar with Mediatrix's business. (*See* ECF No. 145-1 at 2–4.) The Court also agrees that the charges in this case are not about whether Defendants were good at their jobs, but whether they deceived their investors. (ECF No. 145 at 10–11.) Therefore, the Court will not permit any line of question by which Dr. Weithers's testimony may be used to justify or excuse Defendants' investment losses. However, the Government's objections are overruled to the extent it seeks to prevent Dr. Weithers from opining

generally on the reasons one might hedge in ForEx trading and the mechanics of hedging. (*See* ECF No. 145-1 at 3.) The Government's objection based on Federal Rule of Criminal Procedure 16 is also overruled. When read in context, Dr. Weithers's disclosure is clear that the opinions he "may" offer are contained, though articulated at a high level, in the paragraph that contains Opinion 2 and in the next paragraph, which contains Opinion 3. (*See id.*)

**Opinion 3.** The Government's objections are sustained in part and overruled in part. Dr. Weithers will not be permitted to testify about hedging *specific to Defendants' business* because, as just explained, there is nothing in his disclosures to suggest he has any familiarity with Mediatrix's operations. None of the Government's other objections, however, are compelling. The role of hedging in legitimate ForEx businesses is of course relevant to this trial, even when presented generally. After all, Dr. Weithers is not a fact witness, and this proposed testimony is merely background information for the jury to understand Sewall's theory of the facts in this case. (*See id.* at 3–4.) For these reasons it should be obvious that Dr. Weithers can testify based on his general background knowledge as an expert in his field. The Government is not prejudiced, nor will the jury be confused, by the presentation of an alternative theory about what hedging entails in ForEx markets. If the abstract concepts Dr. Weithers explains do not align with the *facts* of what Defendants were doing, the Government is free to point that out on cross examination and closing argument.

Finally, the Court is unpersuaded by the Government's complaint that Dr. Weithers has not disclosed his opinion on whether Defendants were permitted to hedge (and follow on questions). After all, it is the Government that has insisted throughout

this prosecution that this case is *not* about the regulatory status or wisdom of Defendants' investment strategies.  (*See, e.g.*, ECF No. 151 at 1–2.)  Therefore, Dr. Weithers will be permitted to testify about hedging in ForEx and compare it to and contrast it with hedging in other (perhaps more familiar) investment markets.  (*See id.* at 3–4.)

**Opinion 4.**  The Government's objections are overruled.  Though the Government asserts that Opinion 4 is so general that it is irrelevant, is insufficiently supported, might prejudice the Government or confuse the jury, and is inadequately disclosed, in the Court's view it boils down to this: the Government doesn't believe this case is about whether Blue Isle was a legitimate "prime of prime" brokerage business.  (*See* ECF No. 145 at 12–14.)  But whether Blue Isle was a legitimate prime of prime brokerage business or just another way for Defendants to fraudulently skim money off the top is one of the key factual issues in this trial.  To the extent the opinions Dr. Weithers may ultimately offer at trial are not well-aligned with the facts of this case, the Government can point that out during cross-examination and closing argument.

**Opinion 5.**  The Government's objections are sustained, primarily on the basis of Rule 16.  Though the Court has overruled the same objection with respect to Opinions 2, 3, and 4, it views Sewall's disclosures as sparse, but sufficient.  But the single-sentence disclosure that Dr. Weithers "will discuss PAMM [Percent Allocation Management Module] . . . and its relevance in this case" is woefully inadequate.  (ECF No. 145-1 at 4.)  Therefore, Dr. Weithers will not be permitted to offer opinions on PAMM.

**Opinion 6.**  The Government's objections are sustained in part and overruled in part.  The Court is not convinced that Opinion 6 is irrelevant, specifically, the general concepts of spread and rebates are basic concepts within a ForEx expert's general knowledge and may provide the jury with reason to believe that Blue Isle was a legitimate business venture.  (*See id.* at 4.)  But there is nothing in the disclosure to explain how Dr. Weithers could possibly know about Blue Isle's specific relationship with Equiti or its future plans without reviewing documents (or perhaps speaking with Sewall as the Government suggests).  (ECF No. 145 at 14–15.)  If Dr. Weithers reviewed documents from which he learned the specific nature of Blue Isle's relationship with Equiti, he did not disclose any such thing.  Therefore, he will be precluded from opining on anything more than the general concepts identified above.

**Opinion 7.**  The Government's objections are overruled.  Much like the other general concepts contained in opinions already discussed, the general concepts of "edge," "realized and unrealized [profit and loss]," "open" and "closed" profit and loss, and the inherent risk in ForEx trading (and what causes that risk), are important background investment information that Dr. Weithers is obviously qualified to opine upon.

**Opinion 8.**  The Government's objections are overruled based on the following observations: (1) Defendants' position during motion practice has been that the erratic trading behavior Mediatrix engaged in was a result of having to comply with limits imposed by Equiti; and (2) the proposed testimony speaks specifically of brokers imposing restrictions, including Notional Open Position ("NOP") limits on their counterparties.  (ECF No. 145-1 at 5; *see, e.g.*, ECF No. 134 at 17–18.)  The Court,

10

however, further observes as a result of its own cursory research, that NOPs are common in *derivatives* trading, and therefore may or may not be relevant to Defendants' spot trading. Sewall is reminded, however, that as the proponent of Dr. Weithers's testimony, he must satisfy the Court that this proposed testimony is relevant and material.

**Opinion 9.** The Government's objections are sustained, provided it hews closely to the Court's ruling regarding its own experts, Jennifer Sunu and Mark Oldani. (*See* ECF No. 243 at 4–6.) All parties agree that Defendants were not subject to U.S. regulations; if that is clear from the Government's witnesses' testimony, Dr. Weithers will not be permitted to give cumulative testimony on this issue. But if Sunu or Oldani's testimony even implies otherwise, whether by words or omissions, the Court will permit Dr. Weithers to clarify this issue for the jury.

**Opinion 10.** The Government's objections are sustained. Why an investment manager would want to be "off shore" and why an investor may want to work with an off-shore investment manager are irrelevant to the issues in this case. (*See* ECF No. 145-1 at 5.) The Government is warned, however, that the same rules apply to this opinion as Opinion 9. To the extent that Sunu or Oldani wade into these waters, the Government may be opening the door to Dr. Weithers's contradictory testimony.

**Opinion 11.** The Government's objections are sustained. There is nothing in Dr. Weithers's disclosures that explains how he might be familiar with MT4, how he might know that it was Equiti that required FIFO accounting/execution, or what Defendants wanted to occur when they executed their trades. (*See* ECF No. 145-1 at 5.) Based on this disclosure deficiency, this line of testimony by Dr. Weithers will not be permitted.

**Opinion 12.**  The Government's objections are overruled.  In the Court's view the proposed testimony is background information that does not purport to be specific to Mediatrix, it will not prejudice the Government, and is sufficiently disclosed.  Dr. Weithers will simply opine that it is "not uncommon for trading firms to employ more than one set of account" and what those account types generally are and why they are used.  (*See id.* at 5–6.)  To the extent certain account types that he will discuss were not employed by Defendants' businesses, the Government can address this potential weakness in Dr. Weithers's future testimony via cross-examination.

**Opinion 13.**  The Government's objections are sustained in part and taken under advisement in part.  The Court agrees with the Government that there is nothing in the disclosures indicating that Dr. Weithers has reviewed *any* trading data from Mediatrix. (*See id.* at 7.)  The Court agrees, therefore, that he could have no basis to opine that what "Mediatrix actually did was execute . . . "legs" [of a derivatives trade] . . . by putting on simultaneous short and long USD/JPY spot trades."  (*Id.* at 6.)  Indeed, Dr. Weithers has no basis to opine about any trading Mediatrix was possibly engaged in.  On this basis alone the objection is sustained.

It remains the case, however, that some of this proposed testimony may be salvaged depending on the Government evidence that actually comes into evidence at trial.  As far as the Court can tell, Defendants were not trading ForEx derivatives; however, should the evidence show otherwise, such that general knowledge about derivatives is relevant, Dr. Weithers is qualified to and will be permitted to opine on that subject.  For this reason the Court takes this separate matter under advisement.

**Opinion 14.**  The Government's objections are overruled.  If the Government's witnesses opine that hedging has no economic or financial benefit in the context of ForEx, Dr. Weithers will be permitted to rebut that testimony.

**Opinion 15.**  The Government's objections are sustained.  In the Court's view, the fact that only some investors were eligible to entrust their money to Defendants has no bearing whatsoever on the question of whether their investments were induced and later concealed by false and misleading statements.

**Opinion 16.**  The Government's objections are sustained.  The Court agrees with the Government that the unilateral imposition of NOPs is irrelevant to whether Defendants lied to investors about the status of their investments.  As the Court explained with respect to Opinion 8, Dr. Weithers may testify generally to what NOPs are and how they affect investment managers, but no more.

**B.**   **Porter Motion**

As with the Weithers Motion, the Government attaches a chart to the Porter Motion identifying the specific opinions and bases for objection.  (ECF No. 148-1.

1.   Summaries Prepared by Porter

The Government argues that the summaries prepared by Porter properly fall within the ambit of Rule 1006, and, as such, they must comply with that Rule's "requirement that the evidence upon which the[ summaries] are based, if not admitted, must be admissible."  *United States v. Samaniego*, 187 F.3d 1222, 1223 (10th Cir. 1999).  In the Government's view, a large portion of Porter's proposed testimony is merely an attempt to evade this requirement by having Porter testify about the contents of documents that are hearsay.  (ECF No. 148 at 2–4.)  It emphasizes that Rule 703, which permits experts to offer opinions based on evidence that is not admissible, does

13

not empower an expert to transform inadmissible hearsay into admissible expert testimony simply by parroting that evidence in open court. (*Id.* at 4–5.)

Sewall responds that the Government's argument misses the mark because it suggests that the *summaries* must be admissible under Rule 1006 for Porter's *testimony* to be admissible under Rules 702 and 703. (ECF No. 157 at 5, 7.) He contends Porter's testimony is not an end run around Rule 1006 because Porter merely "based his calculations—and ultimately his opinions—on account statements in discovery in this case." (*Id.* at 7.) He argues this is common and well-accepted practice in the forensic accounting field, thereby satisfying the requirements of Rule 703. (*Id.* at 7–8.) So too, he says, it is common practice for forensic accountants to rely on the work product of other experts in the field, namely accounting firm Grant Thornton, which prepared the so-called "Agreed-Upon Procedures" report. (*Id.* at 8.)

Contrary to Sewall's argument, the issue with Porter's proposed testimony is not that he will offer expert opinions on summaries that might not be admissible: it is that he does not offer any *opinions* at all. The Court has closely reviewed Porter's December 18, 2023, disclosures and concludes the sections titled "Introduction," "The GBP 'flash crash,'" and "Profitability" relate to this portion of the Porter Motion. (ECF No. 148-2 at 2–4.) In those sections, the Court cannot discern what Sewall means by Porter's "opinions" apart from his "calculations." The "Introduction" section, as one might expect, merely provides some background information necessary to read the underlying master account statements. That is not an expert opinion.

"The GBP 'flash crash'" section: (1) relates the specifics of an event referred to as the "flash crash" in the Pound Sterling; (2) explains what the "master account

14

statements show"; (3) explains that the master account and customer sub-account statements reflect a "credit" approximately three weeks after the "flash crash"; (4) quotes the a finding from Grant Thornton in the "Agreed-Upon Procedures" report that Equiti was the entity providing the credit; and (5) states that the losses incurred during the "flash crash" appear to have been caused by an error in Equiti's system. (*Id.* at 2–3.) Item (5) is the only statement in that section remotely close to being an expert opinion, but the quotation marks contained in the disclosure suggest this conclusion is lifted from the "Agreed-Upon Procedures" report. (*See id.* at 3.)

Finally, the "Profitability" section is again mere exposition of the information "show[n]" by the master account statements" under various circumstances: realizing all unrealized losses, considering only realized gains/losses, cumulative net profit of closed trades, and "mark[ing] to market" trades with unrealized losses. All of this could be accomplished by a calculator, provided one also possessed the account statements.

The Court has also closely reviewed Porter's December 28, 2023, disclosures. Similarly, this disclosure is replete with basic explanations of the calculations Porter performed, along with some reasoning for a few judgment calls and alternate scenarios he considered. (*See* ECF No. 148-3.) In this two-page disclosure, the closest thing the Court can find to an expert opinion is the statement that "either [of two] amount[s] would provide a reasonable estimate of the amounts reimbursed to client accounts in trade adjustments related to the Flash Crash." (*Id.* at 1–2.) In the Court's view, this is most fairly read as an explanation for why Porter provided calculations using both amounts in his summaries rather than an opinion on the objective reasonableness of either amount as an estimate of losses related to Equiti system errors that were later reimbursed.

15

And, if the Court reads this statement incorrectly, Porter is likely not qualified to give such an opinion.

In sum, the Court agrees with the Government that these portions of Porter's proposed testimony are merely summation and not opinion, and on that basis this testimony will be excluded. The Court notes, however, that nothing in this ruling precludes Sewall from attempting to introduce these summaries through Porter, assuming Sewall can comply with the requirements of Rule 1006 for their admission.

   2.  <u>Rule 403 & Porter's Qualifications</u>

The Government challenges four specific opinions under Rule 403, which it identifies by number according to its attached table. (ECF No. 145 at 6–8; ECF No. 148-1.) The Court has already ruled that all but one of the challenged opinions are inadmissible (as expert testimony) in the preceding section, *see supra* Part II.B.1, and will not address them separately under Rule 403. That leaves only Opinion 7, which the Government specifically challenges on the ground that it is outside the scope of Porter's expertise; therefore, the Court analyzes Opinion 7 under that framework rather than that of Rule 403.

Opinion 7 is a series of statements about what would happen if a trader intends to use an execution method that permits hedging and engages in trades with such a strategy in mind but the broker instead "employs FIFO in customers' trading accounts." (ECF No. 148-2 at 4–5.) The Court agrees that these statements are not within the scope of Porter's forensic-accounting expertise. Therefore, they are excluded.

   3.  <u>Relevance & Confusing the Jury</u>

The Government argues that Porter's expert knowledge of FIFO as used in the accounting context is irrelevant because it means something else in the ForEx context.

16

For the same reasons stated above with respect to similar objections to Dr. Weithers's anticipated testimony, *see supra* Part II.A.4, the Government's objections are overruled.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1. The Government's Motion to Exclude Expert Testimony of Defendant Sewall's Proffered Witness Dr. Timothy Weithers (ECF No. 145) GRANTED IN PART, DENIED IN PART, and TAKEN UNDER ADVISEMENT IN PART as set forth above; and

2. The Government's Motion to Exclude Expert Testimony of Defendant Sewall's Proffered Expert Witness Cliff Porter (ECF No. 148) is GRANTED IN PART and DENIED IN PART as set forth above.

Dated this 24th day of April, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge