**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 21-cr-034-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL SHAWN STEWART**, and
2. **BRYANT EDWIN SEWALL**,

    Defendants.

---

**ORDER DENYING IN PART AND DENYING IN PART AS MOOT
DEFENDANTS' JOINT MOTION *IN LIMINE***

---

The Government charges Defendants Michael Shawn Stewart ("Stewart") and Bryant Edwin Sewall ("Sewall") (jointly, "Defendants") with fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371.  (ECF No. 1.)  Currently before the Court is Defendants' Joint Motions [*sic*] in Limine ("Motion").  (ECF No. 192.)  The Government filed a response.  (ECF No. 224.)

For the reasons explained below, the Motion is denied in part and denied in part as moot.

**I. LEGAL STANDARD**

**A.**    **Rules 401, 402 & 403**

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994);

*see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

**B.    Rule 404(b)**

Rule 404(b) provides:

> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> (3) Notice in a Criminal Case. In a criminal case, the prosecutor must:
>
>> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>>
>> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>>
>> (C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of

2

pretrial notice.

A court considers a four-factor test when determining the admissibility of evidence under Rule 404(b). The test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing four sources that serve as "the protection against . . . unfair prejudice" when admitting evidence under Rule 404(b)).

## II. ANALYSIS

Defendants challenge six categories of evidence relating to: (1) impact on victims; (2) Defendants' lifestyles and spending; (3) Defendants' prior bankruptcy filings; (4) Stewart's prior employment by Trump University; (5) Defendants' racist, xenophobic, or misogynistic statements; and (6) National Futures Association ("NFA") regulations.

### A.     Uncontested and Previously Resolved Issues

Some of Defendants' challenges require little discussion to resolve.  The parties agree that Stewart's previous employment at Trump University is irrelevant to this case, and the Government represents in its response brief that it will not introduce or specifically elicit evidence relating to "Trump University or the fraud associated therewith."  (ECF No. 224 at 8.)  The Court will hold the Government to its word, and therefore, the portion of the Motion challenging such evidence is denied as moot.  The

3

parties likewise agree that any racist or xenophobic statements Defendants made or sentiments they may hold is irrelevant, and the Government represents in its response brief that it will not introduce or elicit evidence related to this subject. The Court will also hold the Government to its word on this point and denies the related portion of the Motion as moot.[1]

As for NFA regulations, the Court's recent Amended Order Ruling on Defendants' Joint 702 Motion considered many arguments, including those based upon Rules 401, 402, and 403. (*Compare* ECF No. 248 at 4–6 (discussing how concepts related to NFA rules are relevant despite the NFA rules themselves being irrelevant), *with* ECF No. 192 at 11–13 (arguing that NFA rules are irrelevant).) This portion of the Motion is fully controlled by the Court's prior Order, which permits the Government's witnesses, Jennifer Sunu and Mark Oldani, to testify (1) generally about specific subjects; (2) that some conduct Defendants are alleged to have engaged in might enable deceit; and (3) that that conduct is prohibited in some parts of the world. (ECF No. 248 at 6.) That Order also prohibits them from testifying (i) that certain conduct is prohibited under NFA rules for U.S.-based traders; (ii) as a corollary to (i), why such conduct is prohibited in the U.S.; and (iii) in a way that suggests Defendants were subject to NFA rules or should have followed NFA rules during the relevant period. (*Id.*) Therefore, this portion of the Motion is also denied as moot.

**B.    Victim Impact**

Defendants seek to exclude various "Investor Questionnaire[s]" that detail the

---

[1] The relevance and admissibility of evidence related to Defendants' misogynistic statements "emasculating" their former business partner, Michael Young, are disputed. The Court addresses that evidence separately. *See infra*, Part II.E.

impact Defendants' alleged fraud had on their investors' personal and financial lives. (ECF No. 192 at 1–2.)  They argue this information is irrelevant because "[a]ctual pecuniary loss is not an essential element of either" wire fraud or conspiracy to commit wire fraud, the only crimes charged in the indictment.  (*Id.* at 3.)  Therefore, evidence showing how investors have been affected does not tend to make any material fact more or less probable.  (*See id.* at 3–4; Fed. R. Evid. 401.)  And even if this evidence is relevant, they contend that whatever "marginal and/or minimal incremental probative need of such evidence for that purpose is substantially outweighed by the danger of unfair prejudice." (ECF No. 192 at 4 (citing *United States v. Copple*, 24 F.3d 535, 546 (3d Cir. 1994)).)

The Government responds that the evidence Defendants seek to exclude is relevant in two ways.  First, it tends to show that Defendants' allegedly false statements were material (*i.e.*, they caused their investors to make decisions they otherwise would not make).  (ECF No. 224 at 3.)  And second, proof that others were "actually victimized by the fraud is good evidence of the schemer's specific intent . . . ."  (*Id.* (quoting *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970)); *id.* at 4 (collecting cases).)

The Court questions why the Government felt it necessary to exalt *Regent Office Supply* as "a hoary staple of law school case books," (*id.* at 4), when it could have simply cited published Tenth Circuit law directly supporting its position.  Unless an issue requires expansive research or is unresolved by Tenth Circuit law, the Court is more concerned with binding circuit precedent.  For instance, in *United States v. Holloway*, 826 F.3d 1237, 1246 (10th Cir. 2016), the court whose decisions are in fact binding in

5

this proceeding explained,

> As we have repeatedly recognized, "fraudulent intent is difficult to prove with direct evidence," and thus "it may be inferred from circumstantial evidence considered in its totality." One means of establishing intent to defraud is by proof of economic harm to victims of the fraud.

826 F.3d at 1246 (citations omitted); *accord United States v. Welch*, 327 F.3d 1081, 1104–05 (10th Cir. 2003) (collecting cases), *abrogation on other grounds recognized by United States v. McBride*, 94 F.4th 1036, 1043 n.9 (10th Cir. 2024). Like Defendants, the defendant in *Holloway* relied on *Copple* and Rule 403 to argue the unfair prejudice of admitting victim impact statements substantially outweighed the probative value. *Holloway*, 826 F.3d at 1245. Though *Holloway* approved of *Copple* generally, it noted that the Third Circuit's ruling was limited only to instances where the admitted victim impact evidence goes "beyond anything that [i]s reasonable to prove . . . specific intent to defraud." *Id.* at 1244. Therefore, while the Court will provisionally admit a reasonable amount of victim impact evidence, it will not allow excessive cumulative evidence in this vein. This portion of the Motion is denied.

**C.     Defendants' Lavish Lifestyles**

Defendants argue testimony and exhibits describing the flow of funds between Defendants' businesses, their brokerage, and various bank accounts should be excluded. Specifically, they argue that summary evidence's references to "jewelry," "boat[s]," and "real estate" is irrelevant and will inflame the jury's sensibilities. (ECF No. 192 at 5.) They argue that "[w]hether someone engages in displays of ostentatious wealth does not make it any more likely that their wealth was gained via illegal means . . . ." (*Id.* at 6 (citing *United States v. Jackson-Randolph*, 282 F.3d 369, 377–78 (6th Cir. 2002)).) Because the motivation for almost all financial crimes—pecuniary gain—is

6

both the same and obvious, they argue admitting evidence of their opulence will stoke "class prejudice."  (*Id.* at 7 (citing cases).)  In their view, the risk of this improper, emotional bias influencing the jury's deliberations substantially outweighs whatever slight probative value this category of evidence might have.  (*Id.*)

The Government concedes that evidence of wealth or lifestyle alone is not "particularly probative" of the charged offenses.  (ECF No. 224 at 5–6.)  But it argues that evidence regarding the use of wealth can be probative of intent to defraud when the wealth is specifically connected to the charged criminal activity.  (*Id.*)  In the Government's view, this is exactly such a case because summaries tracing funds tend to rule out other, noncriminal explanations for investors' lost assets, such as business expenses or incompetence.  (*See id.* at 6–7.)  Moreover, it argues the summaries in fact *downplay* Defendants' lifestyle spending by choosing "the most anodyne words available—'boat- instead of 'yacht' and 'jewelry' instead of 'diamonds' . . . ."  (*Id.*)

The Court is persuaded by the Government's arguments.  As it points out, Rule 403 is unconcerned with evidence that is prejudicial, even extremely prejudicial.  (*Id.* at 7.)  What the Rule concerns is *unfair* prejudice, and, even then, the rule permits evidence that is potentially unfairly prejudicial in most circumstances.  *See* Fed. R. Evid. 403 (giving district courts discretion to exclude relevant evidence if its probative value is *substantially outweighed* by a danger of unfair prejudice, such as suggesting to the jury an emotional rather than legal reason for reaching a particular verdict).  Evidence suggesting Defendants stole investors' money and then spent it on frivolous luxuries is certainly prejudicial—it is hard to imagine such a thing happened by accident.  But that does not mean it is *unfairly* prejudicial.  Further, to the extent this evidence might stoke

7

"class resentment," the Court will hold the Government to its word that it will not incorporate pictures into its summaries and retain their "restrained color palette" and cool-headed language. (ECF No. 224 at 6.)

This portion of the Motion is therefore denied in part and denied as moot in part.

### D.     Defendants' Prior Bankruptcy Filings

Defendants argue evidence of their prior bankruptcies is irrelevant; likely to confuse the jury or waste time with a mini-trial on complex bankruptcy law; or lead the jury to make determinations about their character in violation of Rule 404(b). (ECF No. 192 at 7–1.) These arguments are utterly without merit.

The Court agrees with the Government's arguments in response. There is evidence showing Defendants falsely stated to investors that neither of them had ever *applied* for bankruptcy. (ECF No. 224 at 7.) Evidence of their prior bankruptcies tends to show these statements were false and made with the intent of inducing others to invest or stay invested with Mediatrix. (*Id.*) The obvious probative value of this evidence will not open the door to the intricacies of bankruptcy law; the mere *fact of the filing* is what is relevant for the jury to determine whether Defendants made intentionally false and misleading statements. (*Id.*) Further, this evidence is not other-act evidence; as the Government pithily puts it, "it is *this* act evidence," serving only to show that the statements made during the alleged conspiracy were knowingly false or misleading. (*Id.* at 7–8.)

### E.     Derogatory Statements About Michael Young

Defendants argue instances of them referring to Young as "princess" or "describe him and his actions using other emasculating terms" are irrelevant and likely to "offend jurors and engender animosity" toward them. (ECF No. 192 at 10–11.)

8

The Government quibbles with whether referring to Young as "princess" was "emasculating" or merely deriding him as "act[ing] entitled and demanding." (ECF No. 224 8–9.) To that, the Court asks, "Why not both?" Putting this aside, the Government argues that: (1) Defendants' obvious disdain for Young rebuts any attempt they may make to pin their deeds on him; (2) the Court has already concluded two of the relevant statements are not hearsay under Rule 801(d)(2)(E); and (3) a child would not be "inflame[ed]" by these comments, let alone adults. (*Id.* at 9.)

In the Court's view, the specific fact of Defendants' use of the word "princess" is of marginal probative value. It is hard to follow the Government's theory that simply because Defendants disliked Young, he could not have been the mastermind behind the scheme. When the Court issued its Order on Defendant[s'] Motion for *James* Hearing, it found statements 42 and 45 in furtherance of the conspiracy because they suggest Defendants were concealing something from Young and wanted to prevent him from asking questions, not because they made at-least sub-textually sexist remarks in the process. (*See* ECF No. 161 at 8 ("[S]tatements that conceal or prolong the concealment of the conspiracy from non-conspirator Michael Young . . . are also in furtherance of the conspiracy.").) On the other side of the Rule 403 scale, the Court agrees with the Government that the risk of unfair prejudice is low. Therefore, exercising its discretion, the Court concludes the risk of unfair prejudice does not substantially outweigh the statements' probative value, and this portion of the Motion is denied.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendants' Joint Motions [*sic*] *in Limine* are DENIED IN PART and DENIED IN PART AS MOOT as set forth above.

Dated this 26th day of April, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge